IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERESA CORBEZZOLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:20-CV-02150 |
| | § | |
| DONALD J. WILEY, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| | § | |
| Defendant. | § | |

Before the Court in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 16) and Defendant's Cross-Motion for Summary Judgment (Document No. 17). Having considered the cross motions for summary judgment, each side's response to the other's motion (Document Nos. 23 & 24), and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

## I.   Introduction

Plaintiff Teresa Corbezzolo ("Corbezzolo") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits. Plaintiff claims in this appeal that: (1) "The Administrative Law Judge ("ALJ") erred in failing to find plaintiff's multiple impairments as severe impairments" (2); "The ALJ violated 20 C.F.R. § 404.1527 in not considering all required factors when assigning weight to medical opinions and erred in affording more weight to the

opinions of non-treating physicians"; and (3) "The ALJ erred in finding Plaintiff can perform light work." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's November 8, 2019, decision, that the decision comports with applicable law, and that the decision should be affirmed.

## II.     Procedural History

On April 17, 2018, the plaintiff applied for Title II disability insurance benefits ("DIB"), claiming that she had been unable to work since December 14, 2016, as a result of chronic Lyme disease, ganglion cysts in her hands, Hashimoto's and depression (Tr. 230). The Social Security Administration ("SSA") denied the application at the initial and reconsideration stages. After that, plaintiff requested a hearing before an ALJ. The SSA granted her request and the ALJ, Andrew J. Wiley, held a hearing on September 24, 2019, at which plaintiff's claims were considered de novo. (Tr. 36-94). After that, on November 8, 2019, the ALJ issued his decision finding plaintiff not disabled. (Tr. 7-35).

Plaintiff sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On April 13, 2020, the Appeals Council found no basis for review (Tr. 1-6), and the ALJ's decision thus became final. Plaintiff filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

**III.    Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act explicitly grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial

evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such employment exists in the immediate area in which he lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of impairment is not enough to establish that one is suffering from a disability. Instead, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)). The Commissioner applies a five-step sequential process to decide disability status:

> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe impairment" or combination of impairments, she will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience and residual functional capacity ("RFC"), she will be found disabled.

*Anthony*, 954 F.2d at 293; see also *Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner indicates that other jobs are available, the burden shifts, again, to the claimant to refute this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If the Commissioner determines that the claimant is or is not disabled at any step in the process, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, the ALJ found at step one that plaintiff had engaged in substantial gainful activity ("SGA") during the alleged onset date on December 24, 2016 (Tr. 12). Plaintiff has not engaged in SGA from 2018 onward. (*Id.*) At step two, the ALJ determined that plaintiff's diabetes mellitus, carpal tunnel syndrome, status post cartilage repair of the left wrist, and thyroiditis were severe impairments. (Tr. 13). Additionally, the ALJ found that Plaintiff's major depressive order was non severe because her examinations were consistently normal and the prescribed medication was working according to the medical evidence evaluated by the ALJ. (Tr. 13-14). At step three, the ALJ determined that plaintiff did not have an impairment or a combination of impairments that met or equaled a listed impairment (*Id.*) The ALJ considered plaintiff's diabetes mellitus, hypothyroidism, bilateral carpal tunnel syndrome, and hand impairments in making the determination. (Tr. 15- 19). Before considering steps four and five, the ALJ determined that the

plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant is capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking 6 hours in an 8-hour workday, and sitting for 6 hours in an 8- hour workday. The claimant is unable to climb ladders, ropes, or scaffolds. However, the claimant is able to use her hands for occasional fine manipulation and frequent gross manipulation. (Tr. 19). At step four, the ALJ determined, based on that RFC, that plaintiff could not perform her past relevant work as an electronics technician (Tr. 25). The ALJ concluded, at step five, that plaintiff could perform jobs in the unskilled sedentary light and medium jobs range, such as flagger jobs (as seen on roads), a call-out operator, and a security system monitor, and that she was, therefore, not disabled. (Tr. 28).

In this appeal, plaintiff asserts three claims with minor citation to the record and lacking medically backed evidence. In the first claim, plaintiff maintains that the ALJ "did not properly consider the severity" of plaintiff's many medical conditions at step 2, and then erred in formulating Plaintiff's RFC. Plaintiff argues that the "ALJ's evaluation of the medical opinions are inadequate, incomplete, and biased." Plaintiff argues that more factors should have weighed in regards to each medical opinion. Plaintiff further claims that ALJ erred by finding that she "can perform light work." Plaintiff contends that the ALJ failed to consider reduced bilateral manual dexterity in formulating her RFC. Furthermore, the plaintiff claims the ALJ should have ordered a consultative examination to make a more informed decision. Each of these claims will be considered in connection with the record evidence and the ALJ's written decision.

## IV.  Discussion

The majority of medical evidence relates to plaintiff's wrists. In 2016, Plaintiff first complained of numbness and tingling in the hands. (Tr. 224, 351, 426, 670). She had her first

carpal tunnel surgery in 2017. (Tr. 477). There is medical evidence of diabetes mellitus, depression, hypothyroidism, and other hand impairments. (Tr. 13, 379, 772-775, 1049-1084, 1156-1160). In 2016, plaintiff missed work for her first time but was ready to go back soon after surgery. (Tr. 351). Plaintiff had an MRI done of the left wrist which confirmed scattered ganglion cysts. She also was treated for Hashimoto's disease, and a tear in her triangular fibrocartilage later by. Dr. Hinojosa. (Tr. 443, 459, 670). Plaintiff had follow up office visits with Dr. Hinojosa and was told to wear a splint on her left wrist. (Tr. 446).

Plaintiff started seeing Dr. Copeland in 2017 and was told by Dr. Copeland she had mild degenerative changes in her wrist. (Tr. 492). Dr. Copeland referred plaintiff to Dr. Lebas for a nerve electromyography study. Results of the nerve electromyography confirmed that Plaintiff had carpal tunnel syndrome and a left tear in the triangular fibrocartilage of her left wrist (Tr. 489). Dr. Copeland opined that the left tear could be treated with a splint and she had no nerve entrapment. (*Id.*) However, the left splint was not helping; Dr. Copeland diagnosed median left wrist neuropathy and a mild decrease in median nerve distribution. (Tr. 482-483, 495). Dr. Copeland told the plaintiff she could go back to work if she wore splints, but cautioned that it might aggravate her symptoms. (Tr. 495).

On September 5th, 2017, Dr. Copeland performed left carpal tunnel release surgery and a right carpal injection. (Tr. 450-457). Dr. Copeland reported at plaintiff's post-op visit that she said she was "happy with her progress." (Tr. 477). Progress notes continued to show that Plaintiff was doing well. (Tr. 956). Plaintiff reported some tenderness in her left wrist on January 25th, 2018, but could perform physical therapy with minimal difficulty. (Tr. 541, 553). Dr. Elkahili performed an exam on June 19th, 2018, and found the wrists had some inflammation but overall looked good. Plaintiff had a full range of motion. (Tr. 737, 1186). Dr. Lebas performed

an additional CT scan on June 4th, 2018, and opined that the left hand looked normal. (Tr. 1079). An X-ray that was taken on June 8th, 2018, revealed no abnormalities. (Tr. 726). The progress note reveals that there was only slight tenderness at the wrist, she had 40 degrees of motion at the left wrist and a good range of motion in the right wrist. (Tr. 736-737).

Plaintiff saw Dr. Bhaskaran for her depression on January 11th, 2018. Dr Bhaskaran noted that her depression was within normal limits. (Tr. 708). One month later, Dr. Bhaskaran wrote that the depression medication he had prescribed was working. (Tr. 714). Plaintiff was again treated for diabetes mellitus, vitamin D deficiency, and hypothyroidism on June 25th, 2018, by Dr. Juarez (Tr. 828-831). Dr. Lebas would do another screening on June 26th, 2018 and found nerve entrapment at plaintiff's right wrist. (Tr. 791). Dr. Bhaskaran would see plaintiff again in July and confirmed that her Xanax was working. (Tr. 776). Dr. Bhaskaran wrote that Plaintiff's Lyme disease had not resolved (*Id.*) Dr. Lebas performed another electromyography on July 10th, 2018. (Tr. 785) Dr. Lebas opined that plaintiff had a normal bilateral lower extremity and was negative for nerve issues. (*Id.*) However, Dr. Lebas suggested plaintiff undergo a right ganglion block. (Tr. 787). The treatment note shows that Plaintiff continued treatment for hypothyroidism, and minimal nerve entrapment. (*Id.*) Plaintiff underwent a procedure for her ganglion block in July by Dr. Azzam. (Tr. 808).

Plaintiff saw another doctor on October 19th, 2018. (Tr. 996-997). Dr. Maximos opined that operative management was the only way to treat her wrist condition because repetitive movement of using a computer made the pain worse (*Id.*) Dr. Maximos diagnosed nerve entrapment, but said that plaintiff had no current carpal tunnel (Tr. 1000). Dr. Lebas diagnosed plaintiff with chronic hand pain. (Tr. 1082). Successful release surgery was performed on August 24th, 2018, on the trapped nerve of the plaintiff. Following surgery, Plaintiff reported that the

pain had been controlled and she had no complaints. (Tr. 991-993). On September 24th, 2019, Commissioner held the ALJ hearing. In the hearing, Dr. Lace and Dr. Oguejiofor (State agency medical consultants) testified that plaintiff's physical and mental impairments did not impair her ability to work. (Tr. 65- 82). Additionally, a Vocational Expert testified that there were light unskilled jobs in the economy that the plaintiff could work with her impairments, such as a traffic controller, a clerk, or a surveillance monitor. (Tr. 83-85, 91).

**V.      The ALJ correctly determined the plaintiff's severe impairments.**

First, the plaintiff claims the ALJ erred in finding some of her impairments as non-severe. Plaintiff argued the *Stone* standard requires a finding of non-severe only "if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Plaintiff argues the ALJ erred by citing SSR 85-25 and not the *Stone* standard. In *Keel v. Saul*, the Fifth Circuit held that the SSR 85-28 is consistent with *Stone* and it was not reversible for an ALJ to cite to SSR and not *Stone*. *Keel v. Saul*, 986 F. 3d 551, 556 (5th Cir. 2021). SSR 85-25 says that: "[a]n impairment or combination of impairments" is "not severe" if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." 20 C.F.R. 404.1520(c), 404.1522. In *Keel*, the court held that even if the ALJ failed to apply the *Stone* standard at step two, it requires looking at whether there was a harmless error if they proceeded onto the next step. *Keel v. Saul*, 986 F. 3d at 556.

The ALJ found that the plaintiff had the following severe impairments: diabetes mellitus, carpal tunnel syndrome, status post cartilage repair of the left wrist, and thyroiditis. (Tr. 13).

Plaintiff claims that the "bone cysts in her wrists and hands bilaterally, neuropathy, Hashimoto's disease, rheumatoid arthritis ("RA"), Dupuytren contracture, Lyme disease, triangular fibrocartilage complex ("TFCC"), depression, and degenerative joint disease ("DJD") are severe impairments because the impairments affect her ability to engage in work-related functions." (Document 16 at 3). Plaintiff argues that the RFC was inadequate because it did not include these impairments. However, the question is whether ALJ could have reached a different conclusion. Here, because the ALJ considered all of Plaintiff's impairments, severe and non-severe, in formulating the Plaintiff's RFC. any step two error was harmless (Tr. 14-29). The plaintiff points to very few medical records where there ailments are diagnosed; much less, to how these impair her ability to perform SGA.

## VI.    The ALJ gave the appropriate weight to each medical opinion.

Second, as of March 27, 2017, the SSA changed how they consider and articulates medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(c). Plaintiff filed her claim on April 27, 2018, and therefore the new rules apply. The SSA lays out the following factors to weigh for a medical opinion: the examining relationship, the treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and any other factor which the claimant brings to the court's attention. § 404.1520c(c)(1-5). The two most important factors are supportability and consistency. § 404.1520c(b)(2). Supportability factor says that as a medical opinion becomes more relevant, the more persuasive the medical opinion. § 404.1520c(c)(1). The consistency factor states that the more consistent a medical opinion is with the record, the more persuasive the finding will be. § 404.1520c(c)(2).

The new rules remove the "treating physician" rule, which required giving greater weight to the treating physician's opinion absent other specific findings. 20 C.F.R. § 404.1527c(2). Now the ALJ is not required to explain how they reached their decision unless the record equally supports two dissimilar medical opinions. See *Healer v. Saul*, No. SA-19-CV-01497-ESC, 2020 W.D. Texas WL 7074418, at 9 (Dec. 3, 2020). Additionally, the ALJ does not need to give weight to any previous medical opinion. Instead, they must weigh medical opinions they rely upon through the given factors and provide how persuasive they found an opinion. *Fleming v. Saul*, No. SA-19-CV-00701-ESC, 2020 W.D. Texas WL 4601669, at 5 (Aug. 10, 2020).

Plaintiff argues that the ALJ's evaluation of the medical opinions are "inadequate, incomplete, and biased." (Document 16 at 7). According to Plaintiff, the ALJ did not weigh all the factors laid out by the Social Security Administration ("SSA"). However, ALJ only needed to correctly weigh the supportability and consistency factors, which the decision showed that he did. (Tr. 19). Plaintiff's argues that the ALJ gave too much weight to the opinions of Dr. Lace and State agency medical consultant rather than to plaintiff's testimony and her previous physicians who have diagnosed these ailments. The ALJ found that Plaintiff's testimony is not consistent with the record, and none of the doctor's records corroborate the symptoms she complains of in her hands or depression. (Tr. 65-81). Plaintiff claims that the State medical consultant said that the plaintiff had no autoimmune diseases, but the State medical consultant opined that Hashimoto's disease is an autoimmune disease during the oral hearing. (Tr. 70-71).

In the SSA's regulations governing plaintiff's claim, the ALJ's are to consider prior administrative medical findings and medical evidence from State agency medical consultants because these consultants "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). The ALJ correctly found the opinion of Dr. Lace and

the State agency medical consultants to be consistent with the medical records. (Tr. 19). The ALJ did not err in weighing the medical opinions.

Plaintiff additionally claims that the State medical consultant was distracted during the hearing by his cellphone. (Document 16 at 9). During the oral hearing, State agency medical consultant stepped outside the hallway to use his phone but returned to the hearing for questions. (Tr. 91-92). The ALJ asked the plaintiff's counsel if he wanted to ask any additional questions to State agency medical consultant when he returned from the hallway and he declined. (Tr. 94). Even if State agency medical consultant was distracted, Plaintiff's counsel failed to ask any more questions, so there was no impact on his evaluation of the record, and any error was harmless.

## VII.    Performing Light Work

Lastly, plaintiff argues that the ALJ erred in crafting her RFC because not all her medical impairments were accounted in constructing the RFC. Plaintiff argues that she is not able to do light work. (Document 16 at 10). Plaintiff cites Social Security rulings "SSR" 96-8p which states, "the residual functional capacity must be assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of the claimant's medically determinable impairments." (*Id.*) Plaintiff argues that her reduced bilateral manual dexterity was not considered in the formulation of the RFC. (Document 16 at 11). However, the State agency medical consultant, during the hearing, pointed to the normal EMG nerve conduction studies. (Tr. 75-76). Additionally, Dr. Lebas found the scans "looked good" when she reviewed them. (Tr. 1079).

Plaintiff also argues that the ALJ's determination was conclusory and failed to consider how plaintiff's impairments may affect her ability to work lightly unskilled work. (Document 16 at 10). However, the ALJ recognized that Plaintiff's RFC could erode her ability to perform

lightly unskilled work when questioning the Vocational Expert. The Vocational Expert testified that there are a substantial amount of jobs in the economy to work. (Tr. 26-27). Plaintiff's RFC cites several places in the record where several of her other ailments are diagnosed, but as discussed above none of these indicate how it reduces her ability to work. It is the claimant's responsibility to prove their disability. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). After the ALJ demonstrated the RFC, Plaintiff failed to show how even if there was reduced bilateral manual dexterity, it would reduce her ability to work light unskilled jobs.

Plaintiff also argues that the ALJ failed to order a consultative examination and thus did not properly consider all the impairments she had. (Document 16 at 12). Because the ALJ correctly found some of plaintiff's impairments as severe the ALJ did not need to investigate further ones that are not evident in the records. *Guillory v. Saul*, No. 1:19-CV-632, 2021 E.D. Texas WL 1600283, at 9. (Apr. 23, 2021). The record shows plaintiff's impairments being manageable and consistent with performing light unskilled jobs. (Tr. 477, 714, 726, 736-737, 797, 1079). Substantial evidence supports the ALJ's RFC, and the Vocational Expert's testimony, furthermore, the ALJ did not err in failing to order a consultative exam.

## VIII.   Conclusion and Order

Based on the foregoing and the conclusion none of Plaintiff's claims have any merit and that substantial evidence supports the ALJ's decision.

It is ORDERED that Defendant's Motion for Summary Judgment (Document No. 17) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 16) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this _____ day of _____ 29th June _____, 2021

*Frances H. Stacy*

_____

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE